# Purvis, Appellant, *v.* Buffalo, Rochester & Pittsburg Railroad Company.

*Negligence—Railroads—Alighting from moving train—Contributory negligence—Nonsuit.*

It is negligence *per se* to get off **a** moving car or train and to exempt a passenger from this rule on the ground that he was told to get off by an employee of the railroad, it must appear that the direction was in the exercise of some authority or compulsion. Mere advice or direction in the passenger's carrying out of his own purpose is not enough.

Where a person, not a passenger, goes on a train standing at a station with the permission of the trainmen, to locate his wife and daughter in a sleeping car, and as he starts to leave the car, the train moves and the brakeman says to him "hurry up and get off" and in alighting he is thrown under the moving train and injured, he is guilty of contributory negligence, and cannot hold the railroad company liable for his injuries.

Argued Oct. 23, 1907. Appeal, No. 150, Oct. T., 1907, by plaintiff, from order of C. P. Butler Co., Dec. T., 1905, No. 55, refusing to take off nonsuit in case of L. O. Purvis v. Buffalo, Rochester & Pittsburg Railroad Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries.

The court entered a compulsory nonsuit which it subsequently refused to take off, GALBREATH, P. J., filing the following opinion:

A careful re-examination of this case on the pending motion has not convinced us that error was committed in directing a compulsory nonsuit. On the night of July 11, 1905, near midnight, at Butler, plaintiff entered a Pullman coach comprising part of a train which runs from Pittsburg, Pa., to Buffalo, N. Y., over defendant's road.

The train is known as "the flyer" and has the reputation of being a fast train, which was known to the plaintiff. He entered the coach with his wife and daughter, whose destination was a point in Canada. He had secured a stateroom for them, and, by reason of the condition of his wife's health, was anxious to know that the quarters engaged were such as he had

stipulated for and were suited to her condition. In order to be assured of this, as well as to assist his wife and daughter with their baggage, he entered the train with them, informing the brakeman as he was about to enter that he himself was not going away, but only his wife and daughter. Quite a number of others boarded the train at the Butler station. The plaintiff, his wife and daughter, entered the coach at the rear end and walked the length of the car, about seventy-six feet, to the stateroom, which was located at the front end of the coach. After seeing his wife and daughter safely located in their room the suggestion was made to him by someone that the train was starting or about to start, and that he had better get off, which he proceeded to do. The plaintiff testifies as follows: " Well, Mrs. Purvis, when I said that I guessed everything is all right, she says, ' Now hurry and get off ; ' and Mr. Haworth says, 'Yes, I guess the train is in motion ; ' and the conductor was standing right alongside of me."

The aisle of the car was impeded by others who had entered with their baggage, and who were in the act of getting located in their berths, which necessarily retarded somewhat the plaintiff's progress to the rear of the car, where he had entered. On his way down the aisle someone suggested to him that he had better hurry, as the train was moving.

As he approached the rear entrance the brakeman opened the outside door of the coach and said to him, " Hurry and get off." The night was wet and dark, with little light on the platform. The plaintiff stepped to the platform, facing the direction in which the train was moving.

As he jumped, a distance of about twenty inches, to the platform, the train, in quickening its motion, gave a lurch, the plaintiff alighted on the platform, but his feet struck against something and he slipped and fell under the car and was injured in the way testified to by him.

The point on the platform where he alighted was about 145 feet from the point where he had entered, which was therefore the distance the train had already moved when plaintiff jumped from it.

The plaintiff not being a passenger on defendant's train, ordinary care was the measure of defendant's duty toward him : Lucas v. New Bedford, etc., R. R. Co., 72 Mass. 64.

It would be difficult to say, we think, under the evidence, that the defendant company in any respect failed in the exercise of that measure of care toward him. The compulsory nonsuit was not, however, put upon that ground, but was directed because, under the evidence and the law applicable thereto, the plaintiff was deemed guilty of contributory negligence.

The rule of law governing cases of this kind has been stated in many cases. As a general proposition it is negligence in a passenger to jump from a moving train, but to this general rule there are rare exceptions, as when the passenger is placed in peril by the default or negligence of the company, or when he leaves the train while it is in motion, by direction of the company's agents, it is for the jury to say, upon the evidence, whether the act was negligent or not: Penna. R. R. Co. v. Lyons, 129 Pa. 113.

A more recent statement of the general rule, which indicates that its strictness has not been in any degree relaxed, is found in Boulfrois v. Traction Co., 210 Pa. 263, wherein it is said "that to get on or off a moving car, whether propelled by steam or electricity, is negligence per se in him who attempts it."

On part of plaintiff it is contended that his case comes within one of the exceptions to the rule, by reason of the language of the brakeman who said to him, when he was about to get off the train, "Hurry up and get off," which, it is urged, was equivalent to a direction to him to get off. As tending to indicate what is regarded by the courts of our state as such a direction by the agents of the company as will take a case out of the general rule, two cases may be cited.

The first of these is Deery v. R. R. Co., 163 Pa. 403, where a passenger, riding in a combination car, got off through the side door, with the help of the conductor standing on the ground outside, who extended his hand to help her alight, at the same time saying, "Step lively, madam, step lively." In so getting off she was injured, and, in a suit against the company for damages, was nonsuited. The action of the court was, on writ of error, affirmed, and while the act of the plaintiff, in alighting from the train at the side door, was a prominent feature of the case, yet the Supreme Court, in its opinion,

says: "Neither the language of the conductor while she stood in the side door, nor the assistance he gave her in alighting, nor both combined, charged the company with responsibility for the consequences of her careless act. . . . In such case something more is required to render the company liable than its employee's consent to the passenger's negligent act."

In the case of Rothstein v. R. R. Co., 171 Pa. 620, the plaintiff, at Altoona, Pennsylvania, wishing to go to New York, by mistake boarded a train for Pittsburg. On discovering his mistake he said to an employee on the train, "Stop, please, and let me off; I want to go to New York," and received the reply, "We cannot stop this train, step over on your left side and jump off; we are going slow." He jumped off, and in doing so was injured and, having brought suit against the company, a compulsory nonsuit was entered. On appeal to the Supreme Court the action of the court below in refusing to take off the nonsuit was affirmed. The court says : "The sole attempted extenuation of the act lies in the conversation with the person called by the plaintiff a trainman, but whether the person was the conductor of the train, a brakeman or a Pullman car porter does not appear. It does appear, however, that he did not order the plaintiff to jump from the car, and that what he said amounted at most to a suggestion or expression of opinion that he might do so."

In the first of these cases the plaintiff was acting on her own initiative in alighting at the side door of the car, but was helped by the conductor and by him was bidden to make haste in the thing which she was about to do. This, however, did not relieve her of responsibility for her own voluntary act.

In the case of Rothstein v. R. R. Co., the suggestion that he jump from the moving train did not originate with the plaintiff, but came from an employee of the defendant company. But neither the language of the conductor, in the one case, bidding the passenger to make haste, nor the suggestion of the trainman in the other, amounted to a direction to the passenger which would take the case out of the operation of the general rule.

From these cases we may draw the conclusion that the direction which will excuse the act of a passenger in alighting

from a moving train must be such as amounts to or is accompanied by a degree of constraint or compulsion.  In the case at bar the plaintiff alighted from the moving train because it was his fixed purpose to do so.  When asked the question on cross-examination, "You intended to get off?" he answered, "Certainly, that was what I was there for."  That he realized the danger of doing so is evident from his further testimony wherein he says: "Yes, I remember when I was running down the aisle of thinking, now, I must be careful and get off towards the engine, and that is the way I jumped."  The language of the brakeman, "Hurry up and get off," did not impel the plaintiff to do so against his will.  It did not even suggest to him that he jump off, but simply hastened him in doing that which he purposed doing in any event.  It amounted to no more than an expression of opinion on part of the brakeman that he could get off the moving train if he did so quickly.  No constraint was put upon plaintiff.  He was not impelled to do that which he would not otherwise have done.  The very fact, as testified to by plaintiff, that his own purpose was to alight from the train, negatives the idea of any outside constraint or direction.  The language of the brakeman at most but suggested haste in that which plaintiff already purposed doing.  But, as said in Deery v. Railroad Co., 163 Pa. 403, "In such case something more is required to render the company liable than its employee's consent to the passenger's negligent act."  The brakeman's language was not responsible for the plaintiff's initiative, nor did it excuse the exercise of his own judgment.

The motion to take off the compulsory nonsuit is therefore refused, February 25, 1907.

*Error assigned* was the order of the court refusing to take off nonsuit.

*T. C. Campbell*, for appellant.—The plaintiff being on the train for a proper purpose, it was the plain duty of the defendant to hold the train for a sufficient time to enable the plaintiff to assist his wife to the drawing-room of the car, to see that she had the accommodation which he had purchased for her, and which was necessary for her, and then safely to

get off.  Failure in the performance of this duty was negligence on the part of the defendant company : Little Rock, etc., Ry. Co. v. Lawton, 55 Ark. 428 (18 S. W. Repr. 543); Berry v. Louisville, etc., R. R Co., 22 Ky. L. Rep. 1410 (60 S. W. Repr. 699); Morrow v. Atlanta, etc., R. R. Co., 134 No. Car. 92 (46 S. E. Repr. 12) ; Louisville, etc., R. R. Co. v. Crunk, 119 Ind. 542 (21 N. E. Repr. 31); Doss v. Missouri, etc., R. R. Co., 59 Mo. 27; Johnson v. Southern Ry. Co., 53 So. Car. 303 (31 S. E. Repr. 212).

Negligence of defendant company was in not stopping the train to let plaintiff off, after it had started, and in directing him to jump off the moving train, followed by a jerk as he did jump off : Louisville, etc., R. R. Co. v. Ray, 101 Tenn. 1 (46 S. W. Repr. 554); Pennsylvania Co. v. Roy, 102 U. S. 451; Cleveland, etc., R. R. Co. v. Walrath, 38 Ohio St. 461; Thorpe v. New York Central, etc., R. R. Co., 76 N. Y. 402; Evansville, etc., R. R. Co. v. Athon, 6 Ind. App. 295 ; Jones v. Chicago, etc., Ry. Co., 42 Minn. 183 (43 N. W. Repr. 1114); Gulf, etc., R. R. Co. v. Shelton, 30 Tex. Civ. App. 82 (69 S. W. Repr. 653); Eddy v. Wallace, 49 Fed. Repr. 801.

The facts in this case clearly show that it comes within an exception to the general rule as to contributory negligence : Johnson v. West Chester, etc., R. R. Co., 70 Pa. 357; Powelson v. Traction Co., 204 Pa. 474.

In support of the proposition that to get on, or jump off, a moving train in response to the suggestion, advice or direction of a train officer, is not negligence for a passenger unless so dangerous that an ordinarily prudent person would not attempt it, the following cases are cited : Lambeth v. North Carolina R. R. Co., 66 No. Car. 494; Georgia R. R., etc., Co. v. McCurdy, 45 Ga. 288 ; Chicago, etc., R. R. Co. v. Randolph, 53 Ill. 510 ; Filer v. N. Y. Central R. R. Co., 49 N. Y. 47; St. Louis, etc., Ry. Co. v. Person, 49 Ark. 182 (4 S. W. Repr. 755); Jones v. Chicago, etc., Ry. Co., 42 Minn. 183 (43 N. W. Repr. 1114); McCaslin v. Lake Shore, etc., Ry. Co., 93 Mich. 553 (33 N. W. Repr. 724) ; Eddy v. Wallace, 49 Fed. Repr. 801 ; East Tennessee, etc., R. R. Co. v. Hughes, 92 Ga. 388 (17 S. E. Repr. 949); Texas, etc., Ry. Co. v. Bingham, 2 Tex. Civ. App. 278 (21 S. W. Repr. 569); St. Louis, etc., R. R. Co. v. Rosenberry, 11 S. W. Repr. 212.

*C. H. McCauley, F. J. Forquer* and *Lev. McQuistion,* for appellee, were not heard.

PER CURIAM, November 14, 1907:

This is a hard case and appellant's counsel has presented a very able argument to take it out of the general rule that to get on or off a moving train is negligence per se. We have re-examined the authorities to see if it can be brought within the exceptions, but it cannot consistently be done. The rule is founded on solid considerations of public policy for the safety of the traveling community, the exceptions are few in number and the cases must come very clearly within them. The learned judge below has discussed the law and the facts very fully and accurately and, on his opinion, the judgment is affirmed.